**Priest D. BUTLER, Plaintiff–Appellant,**

v.

**FEDERAL WHALEN MOVING AND STORAGE, L.L.C. and Federal Warehouse Company, Defendants–Appellees.**

No. 00–2876.

United States Court of Appeals, Seventh Circuit.

Submitted Dec. 19, 2000.*

Decided Jan. 4, 2001.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Before Hon. JOHN L. COFFEY, Hon. DANIEL A. MANION, and Hon. DIANE P. WOOD, Circuit Judges.

## ORDER

Priest Delon Butler sued his employer, Federal Whalen Moving and Storage, believing that it had discriminated against him on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Butler, who is African–American, claimed that Whalen created a hostile work environment when it failed to terminate a white employee who made a discriminatory comment over Whalen's radio network. Butler also claimed that Whalen terminated him because of his race and retaliated against him for protesting Whalen's handling of the discriminatory comment. The district court granted summary judgment for the defendants. Butler now appeals, arguing that the district court was prejudiced against him and made improper credibility determinations in its grant of summary judgment. We affirm.

In November 1997, Butler learned of a discriminatory comment that a Caucasian co-employee, Tim Titschler, had made several weeks earlier. Titschler, who was making a delivery, had made a call over the radio to Jeff Donohue, Whalen's delivery manager in Milwaukee, and said that "those fucking niggers took my tools." Donohue immediately told Titschler to call him on a pay phone so that he could speak with (and reprimand) Titschler privately. Shortly thereafter, Donohue wrote a formal reprimand and informed Titschler that if he ever made similar statements, he would be fired.

Around the time that Butler learned of Titschler's comment, Donohue began to raise concerns about Butler's disciplinary problems, including talking during staff meetings and ignoring Donohue's attempt to talk with him about his behavior. On December 1, 1997, Donohue issued Butler a written warning that his "apparent lack

of respect and outright insubordinate behavior" over the past several weeks could not continue. A few days later, Donohue issued Butler a second written warning upon learning from his secretary, Angela Martin, that she overheard Butler–who was speaking with assistant manager Dan Schultz about Titschler–threaten to "take care of [the situation] ... with baseball bats." Donohue warned Butler that his threat was "totally out of line, and will never be accepted again." On December 8, 1997, Butler continued to believe that Whalen had not properly disciplined Titschler, and began circulating a petition in the work area, apparently to enlist the support of co-workers who were also upset about Titschler's comment. In response to Butler's efforts to obtain co-workers' signatures, Donohue called Butler into his office, and, according to Donohue, fired him after Butler began swearing at him.

Butler then filed this suit. The defendants moved for summary judgment. Butler responded by submitting a statement of facts that relied, for the most part, on a 24–page document he entitled "chronology of events," unsupported by reference to any affidavits or deposition testimony. The district court granted summary judgment, and Butler appeals.

Butler's brief on appeal contains minimal analysis and raises only general arguments challenging the district court's order. In addition the brief lacks citations to authority and the record, in violation of Federal Rule of Appellate Procedure 28(a)(9). Nevertheless, because Butler is pro se we will proceed as best we can to the merits.

■ Butler first seems to challenge the procedures followed by the district court in granting summary judgment. For example, Butler claims that the district court was prejudiced against him because it did not give him "a fair chance to present witnesses." Butler neither deposed any witnesses, nor submitted affidavits from any witnesses. If Butler believed he lacked the opportunity to discover information from his witnesses, he should have provided the court with an affidavit under Federal Rule of Civil Procedure 56(f) asking for more time before the court ruled on the summary judgment motion. *Williams v. Nat'l R.R. Passenger Corp.*, 161 F.3d 1059, 1063–64 (7th Cir.1998). Furthermore, Butler submitted no evidence supporting his claim that the district court treated him unfairly, and his argument to that extent is frivolous.

Butler also argues that the district court did not "acknowledge the substantial amount of evidence proving [his] case." Butler refers to the 22 exhibits and the "chronology of events" and asserts that the district court chose to believe Donohue, when it should have believed him–and therefore made a credibility determination inappropriate at the summary judgment stage. But the court's failure to mention the 22 exhibits or Butler's "chronology of events" cannot be equated with a failure to consider his evidence. Butler does not point us to any material, admissible information that was improperly overlooked. *See Conley v. Village of Bedford Park*, 215 F.3d 703, 708–09 (7th Cir.2000) (requiring a party opposing summary judgment to set forth "specific facts showing that there is a genuine issue for trial").

■ Butler next argues that the district court erred in finding that Whalen's refusal to fire Titschler did not create a racially hostile work environment. But a single isolated remark normally does not create a hostile work environment, particularly when the employer immediately addresses the remark by taking appropriate remedial action. *See Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 885 (7th Cir.1998). In order for harassment to create a hostile work environment actionable under Title VII, it "must be sufficiently

severe or pervasive to alter the conditions of [Butler's] employment and create an abusive environment." *Tutman v. WBBM–TV, Inc.*, 209 F.3d 1044, 1048 (7th Cir.2000). Titschler's solitary offensive comment, which he uttered outside of Butler's presence and which Butler did not learn of for six weeks, did not create an objectively hostile work environment.

■ The district court also correctly held that Butler failed to establish a prima facie case of race discrimination under the indirect burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). That approach required Butler to show, among other things, that he was meeting his employer's legitimate expectations. *Flores v. Preferred Technical Group*, 182 F.3d 512, 515 (7th Cir.1999). Whalen submitted extensive evidence of Butler's insubordination, which Butler did not counter with any evidence of his own showing that he was meeting Whalen's legitimate expectations. Thus, Butler failed to present a genuine issue of material fact regarding the conclusion that he was not meeting his employer's legitimate expectations.

■ Finally, Butler cannot prevail on his claim of retaliatory discharge. Even if Butler could establish a prima facie case, he submitted no evidence showing that Donohue did not honestly believe him to be insubordinate, and thus cannot show that Whalen's reasons for firing him were pretextual. *See Sanchez v. Henderson*, 188 F.3d 740, 746 (7th Cir.1999).

AFFIRMED.